IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TERI ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-973-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Teri Alexander ("Alexander") challenges the Commissioner's decision finding her not disabled under Title II of the Social Security Act and denying her application for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## PROCEDURAL BACKGROUND

Ms. Alexander applied for DIB and SSI ("Supplemental Security Income") under Titles II and XVI of the Social Security Act on November 3, 1997. AR 188-90,[1] 351-53.[2] After the Commissioner denied these applications, an Administrative Law Judge ("ALJ") held hearings in February and June 2001 (AR 75-136) and subsequently found Ms. Alexander not disabled on October 26, 2001. AR 48-62. Ms. Alexander appealed to this court, and this court remanded the matter back to the Commissioner on February 2, 2004. AR 658-65. The ALJ held additional hearings in July, September, and December 2005, and again on October 11, 2006. AR 889-991. On December 21, 2006, the ALJ found Ms. Alexander entitled to SSI under Title XVI of the Act, but again denied her Title II claim for DIB. AR 627-39. Ms. Alexander appeals the ALJ's DIB denial.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). The ALJ reached different conclusions regarding Ms. Alexander's respective claims under Titles II and XVI. These claims are respectively referred to as Ms. Alexander's DIB and SSI applications.

---

[1]Citations AR refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer January 3, 2008 (Docket #11).

[2]The file index indicates that Ms. Alexander's SSI application appears at pages 351-53. AR 7. Pages 351-354 are missing from the present file.

The ALJ's December 21, 2006, decision found Ms. Alexander's "narcotic seeking abuse, malingering/histronic personality features, obesity, and degenerative disc disease "severe" at step two in the sequential proceedings. AR 630. The ALJ found that these impairments did not meet or equal a disorder "listed" in the Commissioner's regulations, and assessed Ms. Alexander's residual functional capacity ("RFC"):

> [T]he claimant has a residual functional capacity to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds stand and/or walk a total of 4 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday, with a sit/stand option limited to 4 hours on her feet. Due to her narcotic medication abuse, the claimant should also avoid concentrated exposure to workplace hazards (e.g. heights and machinery).

AR 623. The ALJ applied these findings to both her DIB and SSI analysis.

The ALJ found that Ms. Alexander did not establish that her carpal tunnel syndrome caused work-related limitations prior to September 30, 1997, her date last insured for her DIB claim. AR 380. The ALJ found "limitations precluding forceful gripping" regarding Ms. Alexander's SSI claim only. AR 633.

The ALJ found that Ms. Alexander could no longer perform her past relevant work at step four (AR 637), and made different step five findings regarding Ms. Alexander's DIB and SSI claims. Regarding Ms. Alexander's DIB claim, the ALJ found that Ms. Alexander could perform work in the national economy prior to her September 30, 1997, date last insured for DIB. AR 638. However, the ALJ found that after Ms. Alexander reached age fifty-five on September 2, 2006, she was disabled under the Medical-Vocational Guidelines (20 C.F.R. Pt. 404, Subpart P, App. 2) regarding her SSI claim only. AR 639.

The ALJ therefore found Ms. Alexander ineligible for DIB benefits at any time through the

date of her decision, but eligible for SSI benefits as of September 2, 2006. *Id.*

## ANALYSIS

Ms. Alexander presently challenges the ALJ's finding that she was not entitled to DIB. Ms. Alexander first contends that the ALJ failed to follow this court's remand order. Ms. Alexander also challenges the ALJ's step two findings, analysis of her testimony, and assessment of the medical evidence. Ms. Alexander consequently challenges the ALJ's conclusion that Ms. Alexander retained the residual functional capacity to perform her past relevant work prior to her September 30, 1997, date last insured for DIB.

## I.    February 2, 2004, Remand Order

Ms. Alexander repeatedly contends that the ALJ failed to comply with this court's February 2, 2004, remand order. Pl.'s Opening Br. 22-25, 30.

On February 2, 2004, this court found that the ALJ's October 26, 2001, decision improperly reviewed the opinions of Ms. Alexander's physicians regarding her headaches and fibromyalgia. AR 661. The remand order cited rheumatologist Dr. Emori's fibromyalgia diagnosis, and noted Ms. Alexander's receipt of narcotic pain medications. AR 659. The order but did not instruct the ALJ to contact a specific physician, but found that the ALJ should "follow up" with Ms. Alexander's physicians regarding the extent of Ms. Alexander's workplace limitations. AR 660. The order concluded that remand was necessary to "flesh out" unspecified physician opinions. AR 665.

### a.    Standards

Deviation from a remand order is legal error which may warrant reversal. *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989). The ALJ is bound by the Commissioner's final prior decisions absent changed circumstances. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

However, because no final decision has been reached regarding Ms. Alexander's DIB application res judicata principles do not apply to findings regarding that application. *See id.* at 692-93 (stating that res judicata principles, if applied in administrative proceedings, apply to final decisions).

**b.    Fibromyalgia**

The ALJ's December 2006 opinion addressed Ms. Alexander's fibromyalgia in detail.  AR 631-32.  The record shows that Dr. Emori evaluated Ms. Alexander only once, in February 1989. AR 548-550.  This evaluation occurred well prior to the 1996 date Ms. Alexander claims her condition "first bothered her." AR 215.  Dr. Emori offered no subsequent or longitudinal treatment, and is thus properly evaluated as an examining, rather than treating, physician. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (finding that a treating physician must have or have had an ongoing relationship with the patient).

The regulations state that the ALJ may recontact treating physicians.  20 C.F.R. § 404.1512(e).  However, the ALJ has no duty to recontact evaluating sources. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  Therefore, the ALJ did not commit reversible error under this court's remand order by failing to develop Dr. Emori's fibromyalgia opinion.

**c.    Headaches**

This court's remand order noted, in a footnote, that the record indicates that Ms. Alexander experienced migraines "for a number of years and whether that number is 4 or 15 is insignificant." AR 663 n. 3.  This court made no findings regarding the severity of Ms. Alexander's headaches.  Ms. Alexander presently does not assert any limitations stemming from her headaches, and her testimony makes no reference to migraine headaches at any of her six hearings.  AR 75-136, 889-991.  Ms. Alexander was represented by counsel at each of these hearings.

Any omission by the ALJ of Ms. Alexander's headaches is inconsequential for three reasons. First, the ALJ is not bound by previous findings that are not final. *See Chavez*, 884 F.2d at 693 (holding the ALJ bound by previous final decisions of the Commissioner). Second, Ms. Alexander asserts no work-related limitations stemming from her headaches other than her own testimony, discussed below. Third, this court's remand order did not assign a specific finding to Ms. Alexander's headaches. AR 663 n3. This court therefore presently finds any omission inconsequential and not contrary to the February 2004 remand order.

### d.    Development of the Record

The ALJ and Ms. Alexander developed the record following this court's February 2004 remand order. The ALJ held four subsequent hearings, taking additional testimony from Ms. Alexander . AR 889-991. The record shows numerous entries dated after the ALJ's October 2001 decision. AR 569-618. I find that four additional hearings and new medical records establish ample development under this court's instructions that the ALJ clarify the effects of Ms. Alexander's testimony and "flesh out" her medical record.

In summary, the ALJ sufficiently complied with this court's February 2004 remand instructions. Ms. Alexander's allegations of further specific error in the ALJ's analysis are discussed below.

## II.    The ALJ's Step Two Findings

Ms. Alexander concurrently contends that the ALJ's December 2006 decision erroneously failed to find her fibromyalgia and migraine headaches severe at step two in the sequential proceedings. Pl.'s Opening Br. 24.

Ms. Alexander first asserts that the ALJ was bound by her previous severity findings. Pl.'s Opening Br. 23. As noted, the ALJ is bound only by final decisions of the Commissioner, and no final decision has been made regarding Ms. Alexander's DIB claim. The court therefore considers Ms. Alexander's step two challenge independently of the ALJ's previous decision.

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see* also 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of the ALJ's alleged error in reviewing the ALJ's subsequent findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). These findings are reviewed below.

## III.    The ALJ's Step Three Findings

Ms. Alexander contends that the ALJ failed to consider whether her impairments, separately or in combination, met or equaled a listed disorder at step three in the sequential proceedings. Pl.'s Opening Br. 27. Ms. Alexander specifically contends that the ALJ failed to meet the standard articulated in *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Ms. Alexander concurrently submits that the ALJ "might have reached a conclusion that [her] impairments equaled" a listing. Pl.'s Opening Br. 29. Defendant submits that Ms. Alexander must articulate a theory showing that

her impairments met or equaled a listing.  Def.'s Br. 8.

Step three findings are based upon medical evidence only.  20 C.F.R. § 404.1520(a)(4)(iii).  In making a finding that a claimant does not meet a listing, singularly or in combination, the ALJ must consider the "symptoms, signs, and laboratory findings" regarding the claimant's impairment as reflected in the medical record.  *Marcia*,  900 F.2d at 176.  An ALJ is not required to consider impairments in combination unless a claimant presents evidence that those impairments equal a listing in combination.  *Burch*, 400 F.3d at 683.

Ms. Alexander retains the burdens of production and persuasion at step three in the sequential proceedings.  *Bowen*, 482 U.S. at 146 n5 (1987); *Tackett v. Apfel*, 180 F.3d 1093, 1098 (9th Cir. 1999).  Ms. Alexander's present submissions articulate no theory establishing that her impairments meet a listed disorder. Furthermore, as discussed below, the ALJ appropriately based her findings upon the medical record.  For these reasons, the court finds the ALJ's step three analysis sufficient.

## IV.    Ms. Alexander's Testimony

Ms. Alexander submits that the ALJ erroneously rejected her testimony.  Pl.'s Opening Br. 25.   The ALJ found Ms. Alexander's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not credible."  AR 634.   The ALJ based this finding upon Ms. Alexander's drug-seeking behavior, medical record, psychological tests showing exaggeration, poor effort in testing, activities of daily living, and inconsistent statements.  AR 631-35.

### a.    Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide

"clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 1998).

b. **Credibility Analysis**

Ms. Alexander now claims the ALJ engaged in "extra-record research" in finding that Ms. Alexander malingered, and that this activity invalidates the ALJ's credibility finding. Pl.'s Opening Br. 25. Ms. Alexander also asserts that the ALJ improperly relied upon hearsay in finding her not credible. Pl.'s Opening Br. 29.

The ALJ discussed examining psychologist Dr. Kauder's psychological test results. AR 632-33. The ALJ noted Dr. Kauder's findings that Ms. Alexander exhibited "suboptimal effort or embellishment of symptoms" in psychological testing. AR 632. The ALJ also noted that Dr. Kauder

stated that Ms. Alexander's Minnesota Multi-phasic Personality Inventory ("MMPI") personality test results "suggested an 'over-willingness to endorse psychopathologic items, and a strong desire on Ms. Alexander's part to present herself as implausibly psychiatrically disordered.'" AR 632 (quoting AR 407). The ALJ subsequently cited other aspects of Dr. Kauder's report showing discrepancies between Ms. Alexander's performance and her asserted limitations, and concluded, that Dr. Kauder made his findings based upon clinical testing.

The record supports the ALJ's citation to Dr. Kauder's opinion. Dr. Kauder conducted numerous clinical tests and examined Ms. Alexander in January 2002. Tr. 702-11. Dr. Kauder summarized his clinical testing:

> Overall, clinical findings indicate that Ms. Alexander was exaggerating and/or fabricating psychiatric symptomology and likely cognitive impairment as well. As noted . . . a number of the neurocognitive results are seen as potentially being reflective of sub-optimal effort or embellishment of symptomology. These include, an invalid MMPI-2, unexpected and circumscribed deficiencies on a complex figure task, and a memory-impairment profile that presents as the opposite of the pattern that would be expected if the patient indeed were to have any focal left-hemisphere lesion history.

AR 707. The ALJ's analysis, described above, accurately quoted and cited these findings. This citation is therefore affirmed.

Following her analysis of Dr. Kauder's test results, the ALJ noted the *Diagnostic and Statistical Manual* ("*DSM*") definition of clinical "malingering" and found that Ms. Alexander met the *DSM* definition. Ms. Alexander correctly asserts that the ALJ may not construe her own diagnostic impressions. The ALJ's characterization of Ms. Alexander's poor effort and exaggeration in testing as "malingering" under the *DSM* standard is therefore not sustained.

PAGE 10 - OPINION AND ORDER

The ALJ's aggregate credibility finding is not, however, predicated upon a malingering finding. Had the ALJ properly found that Ms. Alexander malingered, she would not be required to find "clear and convincing" reasons for discrediting Ms. Alexander. *Smolen*, 80 F.3d at 1280. Instead, the ALJ made the requisite "clear and convincing" findings. The ALJ noted Ms. Alexander's activities of daily living, inconsistent statements, and medical record. AR 634-36. These findings together constitute sufficient reasons for questioning a claimant's credibility. *Smolen*, 80 F.3d at 1284.

The ALJ's credibility analysis is thus properly supported, even if references to third party statements or the *DSM* malingering standard are omitted. The court may affirm an ALJ's overall credibility finding even when a specific aspect of that finding is not sustained. *Batson*, 359 F.3d at 1197. For these reasons, the ALJ's credibility finding is affirmed.

## V.     Medical Source Statements

Ms. Alexander challenges the ALJ's assessment of her fibromyalgia and migraines. Ms. Alexander also challenges the ALJ's analysis of her treating physicians.

### a.     Fibromyalgia

Ms. Alexander asserts that the ALJ failed to consider her fibromyalgia at "every step" in the sequential proceedings. Pl.'s Opening Br. 24. As noted, the ALJ made no reversible errors at steps two and three.

The ALJ found that Ms. Alexander failed to show that her fibromyalgia is a medically determinable impairment. AR 631-32. However, the ALJ also found that "although fibromyalgia has not been accepted as a severe impairment, it is noted that the limitations due to the claimant's

obesity, and . . . carpal tunnel syndrome, would accommodate limitations normally attributed to [fibromyalgia] syndrome." *Id.*

Errors and omission inconsequential to the ALJ's ultimate disability determinations are harmless. *Carmickle v. Astrue*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195-97; also citing *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).   Under this analysis, to establish that the ALJ committed reversible error in evaluating her fibromyalgia impairment at steps four and five of the sequential proceedings, Ms. Alexander must show that the ALJ rejected limitations attributable to her fibromyalgia which exceed the limitations described in her RFC assessment.

Ms. Alexander's argument does not cite any limitations stemming from her fibromyalgia. Pl.'s Opening Br. 23-24.   Ms. Alexander instead cites rheumatologist Dr. Emori's 1989 fibromyalgia trigger-point examination.  Pl.'s Opening Br. 24.  Dr. Emori's opinion does not establish that Ms. Alexander's fibromyalgia resulted in work-related limitations beyond those identified by the ALJ.  AR 550.

For this reason, Ms. Alexander fails to show that the ALJ erroneously omitted additional limitations stemming from her fibromyalgia.

b.    **Migraine Headaches**

Ms. Alexander also contends that the ALJ inappropriately rejected limitations attributable to her migraine headaches.  Pl.'s Opening Br. 23-24.  Ms. Alexander does not identify the effect of the ALJ's omission of her migraine headaches.   As noted, the claimant retains the burden of establishing the effects of an impairment. *Bowen*, 482 U.S. at 146 n5; *Tackett*, 180 F.3d at 1098.

PAGE 12 - OPINION AND ORDER

Ms. Alexander presently cites emergency room and physician visits for headaches and her own testimony that she experiences "at least one bad headache per week" and that "the last one lasted about two days." Pl.'s Opening Br. 8. However, Ms. Alexander asserts no limitations stemming from her migraine headaches beyond pain and fatigue described in her own testimony. Because the ALJ appropriately rejected Ms. Alexander's symptom testimony, Ms. Alexander fails to establish reversible error regarding her migraine headaches.

### c. Treating Physicians

Ms. Alexander asserts that the ALJ failed to comply with this court's 2004 remand order and submits that there is therefore "no purpose" to "reargue an issue already resolved in Plaintiff's favor, *i.e.*, that the ALJ improperly rejected the opinions of Drs. Emori, Hands, Gerber, Linden and Schulz." Pl.'s Opening Br. 30. As discussed above, this court presently does not find that the ALJ failed to comply with the remand order. Because Ms. Alexander did not ascribe particular error to the ALJ's analysis of these physicians, none will be addressed.

Ms. Alexander's only specific argument regarding her treating physicians asserts that the ALJ failed to adequately address treating physician Dr. Cullen's November 16, 2004, treatment note stating that Ms. Alexander has hepatitis-C, and that her sleep apnea is "likely the root cause of [Ms. Alexander's] pain and fatigue. *Id.* The ALJ noted Ms. Alexander's testimony that she was expecting sleep apnea testing at the time of her hearing. AR 633. The ALJ did not offer further discussion of Ms. Alexander's sleep apnea and did not mention Ms. Alexander's hepatitis-C.

On November 16, 2004, Dr. Cullen noted that Ms. Alexander was awaiting a sleep study, and speculated that "obesity and probable sleep apnea" was a cause of Ms. Alexander's fatigue and

pain.  AR 758.  The record shows that a sleep study conducted on January 5, 2005, showed no sleep apnea events (AR 664), although the examiner concluded that Ms. Alexander exhibited "probable mild sleep apnea/upper airway resistance syndrome which is associated with significant sleep fragmentation and oxygen desaturation."  AR 865.  Between March and October 2005 a nurse practitioner assessed Ms. Alexander with sleep apnea without reference to laboratory findings.  AR 860-62.  Ms. Alexander's argument did not cite these portions of the record.

The record also shows that Dr. Cullen assessed hepatitis-C on November 16, 2004.  AR 758. However, in March 2005, Dr. Cullen revised this diagnosis to a "question of hepatitis C," and referred Ms. Alexander to a gastroenterologist.  AR 738.  In April 2005, Dr. Cullen again assessed Ms. Alexander with hepatitis-C, and noted that a gastroenterologist recommended a liver biopsy, which was postponed.  AR 733.  Dr. Cullen also assessed hepatitis-C in June 2005.  AR 727.

Ms. Alexander again asserts no limitations stemming from these impairments other than her own testimony regarding pain and fatigue.  Pl.'s Opening Br. 30.  Dr. Cullen's November 16, 2004, treatment note speculatively links Ms. Alexander's reported pain and fatigue to sleep apnea, but does not establish work-related limitations pertaining to either sleep apnea or hepatitis-C.  AR 758. The ALJ's omission was therefore inconsequential under the standard articulated above.

Ms. Alexander's present submissions establish no limitations beyond those already included in the ALJ's December 2006 disability determination.  The errors and omissions discussed are inconsequential to this finding for the reasons above.  For this reason, the ALJ's finding that Ms. Alexander did not establish limitations precluding performance of work in the national economy prior to her September 30, 1997, date last insured is affirmed.

PAGE 14 - OPINION AND ORDER

## **CONCLUSION**

The Commissioner's decision that Ms. Alexander did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this   18th   day of November, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

PAGE 15 - OPINION AND ORDER